UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES KEVIN CAMPBELL, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-546-DRL |
| MATT HASSELL and BEAU HOLCOMB, | |
| Defendants. | |

OPINION AND ORDER

James Kevin Campbell, a prisoner without a lawyer, is proceeding in this case "on a Fourteenth Amendment claim against Sheriff Hassell and Jailer Holcomb for money damages for subjecting him to overcrowded and unsanitary conditions from February 2019 to November 2019[.]" ECF 10 at 2. Specifically, Mr. Campbell's amended complaint alleged that, while he was housed in Marshall County Jail as a pretrial detainee, Sheriff Hassell authorized Jailer Holcomb to place a fifth inmate in the four-man cells, which (1) created a trip hazard; (2) forced some inmates to sleep on the ground; and (3) forced inmates to eat on the floor or toilet due to a lack of available seating. ECF 8 at 2-3. Mr. Campbell also alleged that, during a scabies outbreak at the jail in February 2019, he was not properly diagnosed and was forced to stay in a cell with an overflowing toilet during a quarantine to contain the outbreak. *Id.* The defendants filed a motion for summary judgment. ECF 39. Mr. Campbell filed a response, and the defendants filed a reply. ECF 44, 50. The summary judgment motion is now fully briefed and ripe for ruling.

FACTS

A.   *Overcrowding at Marshall County Jail.*

The Marshall County Jail was constructed in 2008 and has 230 permanent beds. ECF 40-1 at 1. Starting in 2018, Marshall County Jail's average daily population began to rise sharply, raising concerns about potential overcrowding. *Id.* at 2. Sheriff Hassell alerted and met with various county officials to discuss potential remedies to bring the jail population down. *Id.*

Beginning in late 2018, Sheriff Hassell and county officials discussed and implemented various remedies to reduce the jail population, including: (1) making arrangements to transfer inmates to a different county; (2) expediting the implementation of Criminal Rule 26 for assessment and release of pretrial detainees; (3) reducing sentences of currently incarcerated county inmates; (4) adding additional deputy prosecutors; (5) adding a fourth court to the County; and (6) constructing an addition to the Marshall County Jail which would house an additional 300 inmates. *Id.* at 2, 5. Many of these options could not be implemented immediately and required various steps and the allocation of resources to accomplish. *Id.* at 2-3.

While the jail worked toward implementing these remedies, the average daily population continued to rise in 2019. *Id.* at 3-5. In January 2019 the average daily population was 218.5; in February 2019 the average daily population was 232.1; in March 2019 the average daily population was 240.7; in April 2019 the average daily population was 232.4; in May 2019 the average daily population was 238.3; in June 2019 the average daily population was 247.3, at which point, the permanent bed capacity was considered

to be exceeded at the facility; in July 2019 the average daily population was 260.0; in August 2019 the average daily population was 291.6; in September 2019 the average daily population was 285.6; in October 2019 the average daily population was 287.3; in November 2019 the average daily population was 272.3; and in December 2019 the average daily population was 254.7. *Id.* at 3-4.

During late 2019, while the remedies to reduce the jail population were being increasingly implemented, the average daily population at Marshall County Jail began to trend downward. *Id.* at 5. In January 2020 the average daily population was 249.7; in February 2020 the average daily population was 233.9; in March 2020 the average daily population was 210.9; in April 2020 the average daily population was 183.5; in May 2020 the average daily population was 151.6; in June 2020 the average daily population was 151.9; in July 2020 the average daily population was 151; and in August 2020 the average daily population was 161. *Id.* at 5-6. The Marshall County Jail population has remained below 230 since February 24, 2020. *Id.* at 6.

During the period of overcrowding at Marshall County Jail, jail officials made several temporary adjustments to the facility to house the surplus of inmates. In June 2019, Chief Jail Officer Holcomb started adding floor space bed assignments by placing one additional inmate in the four-man cells. ECF 40-2 at 2. Jailer Holcomb determined adding an additional inmate to the four-man cells would be the safest option because these cells have the largest amount of floor space and the inmates would be secured during lockdown hours. *Id.* If an inmate was assigned to the floor in a four-man cell, he was given a mat he could place anywhere in the cell. *Id.* Most inmates placed the mat in

3

the center floor space between the permanent bunks, which lessened the space available for the inmates in the bunks but did not entirely obstruct their path. *Id.* at 3. Moreover, inmates in the permanent bunks were free to get out of their beds at the head or foot, which eliminated the need to navigate around the inmate assigned to the floor space. *Id.* Inmates in general population were free to spend most hours of the day out of their cell in the dayroom. *Id.*

In the summer 2019, Jailer Holcomb created additional sleeping space by adding additional bunks in the inmate worker dorm style pod and turning the recreation room into a temporary housing unit. *Id.* at 4. In September 2019, Jailer Holcomb ordered, received, and distributed additional portable bunks. *Id.* Because each pod contained the same number of dayroom seats as permanent bunks, the addition of one extra inmate in each four-man cell resulted in a shortage of dayroom seating. *Id.* As a result, when the dayroom had no available seats, the inmates were allowed to sit on their bunks, stand at the tables, or wait for a space to open up at one of the dayroom tables to eat their meals. *Id.* No inmate was ever forced to sit on the floor or on the toilet to eat. *Id.*

      B.     *Mr. Campbell's Incarceration at Marshall County Jail*.

Mr. Campbell was arrested and booked into Marshall County Jail on October 31, 2018, and released on January 26, 2021. *Id.* at 1. Between October 31, 2018, and November 15, 2018, Mr. Campbell was kept in the main booking area of the facility until he could be classified and assigned to general population. *Id.* at 5. Between November 15, 2018, and June 21, 2019, Mr. Campbell was assigned to a bunk in Cell 1474 of 1470 Pod. *Id.* Cell 1474 did not have a fifth inmate assigned during that time period. *Id.* Between June 21, 2019,

and February 18, 2020, Mr. Campbell was housed in 1322a, one of the recreation areas which was converted into additional bunk space once the jail population was over capacity. *Id.* Between February 18, 2020, and May 1, 2020, Mr. Campbell was housed in a medical cell, which did not have an additional inmate assigned. *Id.* By the time Mr. Campbell was moved out of the medical cell, Marshall County Jail was no longer overpopulated. *Id.*

## ANALYSIS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Because Mr. Campbell filed this action as a pretrial detainee, the court must assess his claims under the Fourteenth Amendment instead of the Eighth Amendment. *See*

*Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Id.* (quotation marks omitted). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Id.* A pretrial detainee can "prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees).

The defendants argue summary judgment should be granted in their favor for several reasons. ECF 40. First, the defendants argue Mr. Campbell's cell assignments show he was never housed in an overcrowded cell during the relevant time period. *Id.* at 14. In his response, Mr. Campbell does not dispute this fact or provide any evidence he was ever housed in an overcrowded cell. ECF 44. Because Mr. Campbell provides no evidence he was personally affected by the overcrowded conditions at Marshall County Jail, he cannot obtain relief based on these conditions. *See Massey v. Helman*, 196 F.3d 727, 739–40 (7th Cir. 1999) ("a litigant must assert his own legal rights and cannot assert the legal rights of a third party").

6

The defendants alternatively argue that, even assuming Mr. Campbell was housed in an overcrowded cell, summary judgment is warranted in their favor because their efforts to address the overcrowding of the jail were objectively reasonable in light of the surrounding circumstances. ECF 40 at 18-22. Specifically, they argue they reasonably accommodated all inmates while taking affirmative steps to reduce the jail population. *Id.* at 21-22.

Here, even assuming Mr. Campbell was housed in an overcrowded cell, the defendants' decision to place a fifth inmate in each four-person cell was rationally related to its objective of safely housing the surplus of inmates while the jail enacted large-scale remedies to reduce the jail population. *See Kingsley*, 135 S. Ct. at 2473. Mr. Campbell offers no evidence the defendants' conduct was punitive, arbitrary, or purposeless. *See Mulvania*, 850 F.3d at 856. Mr. Campbell raises several arguments in his response, but his arguments lack evidentiary support. First, Mr. Campbell argues the defendants allowed the prison to overcrowd and made only pretextual efforts to reduce overcrowding because they wanted to obtain grant funding. ECF 44 at 12-13. But Mr. Campbell provides no evidence to support this argument aside from his own speculation. *See Trade Fin. Partners, LLC*, 573 F.3d at 407 ("inferences relying on mere speculation or conjecture will not suffice"). Second, Mr. Campbell argues placing a fifth inmate in each four-person cell created a trip hazard. ECF 44 at 6-7. However, the defendants provide attestations and photographs demonstrating the inmates still had room to maneuver in the cells with the addition of the extra bunk, which he never draws in dispute. ECF 40-2 at 11-18. Third, Mr. Campbell argues the inmates were sometimes locked down and required to eat meals

in their cell, which forced inmates without bunk assignments to eat their meals on the floor or by sitting on the toilet. ECF 44 at 11-12. But Mr. Campbell provides no evidence he ever personally sat on the floor or toilet to eat his meals, and it is undisputed he had a bunk assignment at all relevant times. Thus, even assuming Mr. Campbell was housed in an overcrowded cell, there is no evidence by which a reasonable jury could conclude the defendants violated Mr. Campbell's Fourteenth Amendment rights by placing a fifth inmate in the four-man cells.

Last, Mr. Campbell argues the defendants exposed him to unsanitary living conditions due to two specific incidents that occurred in February 2019. First, Mr. Campbell argues a toilet overflowed into his cell overnight and a correctional officer forced him and his cellmates to wait until the next morning to get cleaning supplies. ECF 44 at 7-10. Second, Mr. Campbell argues that, during a possible scabies outbreak at the jail, he developed a serious rash he believed may have been scabies but he was never properly diagnosed. *Id.* at 9-10. However, Mr. Campbell has not provided any evidence that either defendant was personally involved in either of these incidents. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (supervisor cannot be held liable in a § 1983 action without "a showing of direct responsibility for the improper action"). Jailer Holcomb attests he had no direct knowledge Mr. Campbell's cell flooded, had no knowledge any inmate in Mr. Campbell's pod was ever diagnosed with scabies, and had no reason to question the medical department's approach to treating Mr. Campbell's rash. ECF 40-2 at 5-6. Mr. Campbell provides no evidence refuting these attestations or showing that either defendant was directly involved in these incidents. Without any

8

evidence that Sheriff Hassell and Jailer Holcomb caused or participated in these incidents, they cannot be held liable under 42 U.S.C. § 1983. *See Wolf-Lillie*, 699 F.2d at 869 ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation").

Accordingly, the record contains no evidence by which a reasonable jury could conclude the defendants violated Mr. Campbell's Fourteenth Amendment rights. Summary judgment is thus warranted in favor of the defendants.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 39); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against James Kevin Campbell.

SO ORDERED.

May 3, 2022                    *s/ Damon R. Leichty*
                               Judge, United States District Court